HESS, EXR., APPELLEE, *v.*
SOMMERS ET AL., APPELLEES;
RONNEBAUM ET AL., APPELLANTS.

(No. 10-81-2—Decided February 2, 1982.)

*Mr. Walter R. Bernard,* for plaintiff-appellee John H. Hess, executor.

*Messrs. Dinsmore, Shohl, Coates & Deupree* and *Mr. Wiley Dinsmore,* for defendant-appellee, Joseph L. Bernardin, Archbishop of Cincinnati.

*Ms. Sheila P. Cooley,* for defendant-appellee William J. Brown, attorney general.

*Mr. Lee C. Falke,* for defendants-appellants Giles Ronnebaum et al.

GUERNSEY, J. The plaintiff, John H. Hess, Executor of the Estate of Frances Broeker, deceased, on June 2, 1980, commenced his action in the Probate Division, Court of Common Pleas of Mercer County, for the construction of the residuary clause of his decedent's will executed on February 23, 1956, and admitted to probate on February 25, 1980, a copy of which was incorporated by reference in the complaint, and the residuary clause providing:

"(h)  All the balance, residue and remainder of my estate I give and bequeath to Our Lady of Guadalupe Catholic

Church, Franklin Township, Mercer County, Ohio, for the building fund."

The complaint further alleged that on the date of the execution of the will the residuary beneficiary "had instituted a building fund for the purpose of building a new church structure," which "was commenced in 1959 with funds obtained by numerous donations and a loan secured by mortgage and was completed and formally dedicated on May 11, 1961," the construction mortgage being paid and released in 1972, that after 1972 the building fund for the church was terminated and as of July 1, 1979, the church had balances in the checking account and savings account totalling $38,802.55. The church was named a defendant, the other named defendants are the heirs and next of kin of the decedent and the complaint sought direction and judgment as to whether the residual bequest failed with the residuary estate passing to the next of kin.

On June 12, 1980, Giles Ronnebaum and other of the individual defendants answered admitting all of the factual allegations of the complaint and filed their counterclaim and cross-claim reiterating such allegations, joining the Ohio Attorney General as defendant, claiming that the will involved is not the last will of the decedent, and seeking construction of the will, that the will be set aside and held for naught, and that the residue of the decedent's estate pass to the decedent's next of kin.

On July 1, 1980, defendants Lou Ann Henning and Jean Ann Borger filed a similar answer, counterclaim and cross-claim.

On July 11, 1980, the defendant Attorney General filed his answer seeking a construction in favor of the church, and raising the affirmative defense to the cross-claims that they should be dismissed because not filed within four months of the admission of the will to probate.

On the same day the Attorney General filed his motion to dismiss the cross-claims in the answers "for failure to properly file this special statutory proceeding of a will contest within the statutory period set out in Revised Code Section 2107.76."

On July 29, 1980, Joseph L. Bernardin, Archbishop of the Archdiocese of Cincinnati, Ohio, moved to be made a party "to the Will Construction" and answered alleging that he was trustee of all property of the church, "holding the same in trust for the parish," admitting all of the factual allegations of the complaint, seeking a construction in favor of the church, and asserting as affirmative defenses to the cross-claims that the filing of the will contest is not timely and that the executor was not made a party to such attempted contest. On August 20, 1980, the plaintiff joined issue on the cross-claims.

On October 22, 1980, the Archbishop filed his motion seeking summary judgment on the cross-claims. The motion was supported by a memorandum but not by any factual documentation permitted by Civ. R. 56. On November 18, 1980, twelve of the individual defendants were permitted to file and did file their memorandum contra the Archbishop's motion for summary judgment. This too was not supported by factual documentation.

On January 20, 1981, the probate court filed its ruling finding that the cross-claims were filed within the time allowed to bring a will contest action, but that no action to contest the validity of the will has been commenced as required by law and the Civil Rules. It ordered summary judgment granted in favor of the Archbishop and dismissed the counterclaims and cross-claims.

On March 15, 1981 the Archbishop filed his motion to file an amended answer and was permitted to file same which operated not to admit, but to deny, the allegations of the complaint that on February 23, 1956, the church had instituted a building fund for the purpose of building a new church structure, and to deny that after 1972 the building fund

was terminated and that as of July 1, 1979 the church had the alleged balances in checking and savings accounts.

On April 27, 1981, the Archbishop filed his motion for summary judgment (on the pleadings) and on May 11, 1981, the Attorney General joined in the motion. On May 26, 1981, the defendants, next of kin, filed their memorandum contra the motions for summary judgment and on May 28, 1981, the plaintiff executor did likewise. No factual, or evidentiary, documentation permitted by Civ. R. 56 was filed in support either of the motions or of the memorandums contra the motions.

On June 23, 1981, the probate court filed its journal entry of judgment finding from an "examination of the entire will" that the testatrix "clearly intended to make certain specific bequests some of which were to lapse and become a part of her residuary estate in the event that certain of the legatees did not survive her" and "clearly intended that the residue of her estate should go to Our Lady of Guadalupe Church." Accordingly, the court ordered the executor to distribute the residue to the Archbishop as trustee for the church.

It is from this judgment that appeal was taken by all but two of the next of kin named as defendants in the complaint, they assigning error as hereinafter set forth.

### First Assignment of Error

"In the Journal Entry filed January 20, 1981, the trial court erred when it ruled that it was improper for the Defendants-Appellants to file an action to contest the Will that was commenced by the filing of a Counter-claim and Cross-claim to a Complaint by the Plaintiff Executor for the Construction of Will."

Neither in the argument in support of this assignment of error nor in the Archbishop's argument contra is any claim made of untimeliness of the purported will contest so that subject will not be ex-

plored, the simple issue remaining being whether a will contest action may be "joined" to a previously commenced action for construction of the same will.

Although the trial court relied strongly in determining that the will contest counterclaims and cross-claims should be dismissed because no will contest action had been commenced by a "complaint," as well as by reason of the general character and independence of such an action, we are of the opinion that there are even more cogent reasons to arrive at the same conclusion.

Under Civ. R. 13 governing the filing of mandatory and permissive counterclaims, as well as cross-claims, the following language is used:

"(A) Compulsory counterclaims. A pleading shall state as a counterclaim *any claim* which at the time of serving the pleading the pleader has *against any opposing party* * * *.

"(B) Permissive counterclaims. A pleading may state as a counterclaim *any claim against an opposing party* * * *.

"* * *

"(G) Cross-claim against co-party. A pleading may state as a cross-claim *any claim* by one party *against a co-party* * * *." (Emphasis added.)

In our opinion although legatees, devisees, heirs, executors and other interested parties are necessary parties to a will contest action, it does not follow that by bringing such an action those who contest the will are making *claims against* any opposing party. Although the issue is no longer specifically defined by statute, the will contest still raises the single and ultimate issue whether the writing produced is the last will or codicil of the testator. The "claim" made by the party or parties bringing the will contest action is that the will or codicil is not that of the testator, and only incidentally to this issue do such party or parties establish any right or further claim against any property of the estate. The contestors recover nothing from any of the other necessary

parties, including the executor, whether those necessary parties support the will or oppose the will, and parties to the action ordinarily need not answer to receive the same protection as do those who do. Cf. *Meyer* v. *Welsbacher* (1947), 80 Ohio App. 200 [35 O.O. 518]. Indeed there is such lack of adversity *between* the proponents and opponents that at one time in Ohio, and still in many other states, a will contest was considered an action *in rem.* 55 Ohio Jurisprudence 2d 721, Wills, Section 327. We conclude that a will contest action does not constitute such a *claim* as to be susceptible of pleading as a matter of right as a counterclaim or cross-claim. Cf. 56 Ohio Jurisprudence 2d 215, Wills, Section 690.

Although not necessarily precluding pleading a will contest action as a counterclaim or cross-claim to an action for will construction, it should also be observed that the former action is tried to a jury whereas the latter is tried to a judge and, in any event, would require the application of Civ. R. 42(B) and 13(I) as to separation of trials.

The first assignment of error is, therefore, without merit.

### Second Assignment of Error

"Where the issue is whether the testatrix had a general charitable intent or a special charitable intent when she left the residuary [*sic*] of her estate to a church for 'the building fund,' it is error for the court to refuse to receive extrinsic evidence so the court can view the Will as did the testatrix when she executed it."

Although the premise of the second assignment of error is that the trial court refused to receive extrinsic evidence it is difficult to determine appellants' basis for such premise as we find no specific ruling of the trial court in this respect, and such a ruling would be foreign to the summary judgment on which the judgment is based. Of course, it is implicit in the rendering of the summary judgment, construing the provision of the will, that the pleadings, in and of themselves, were sufficient for such construction without further evidence.

The fact, however, that summary judgment procedure was involved determines whether error intervened. Neither the Archbishop nor the heirs and next of kin filed affidavits or other evidentiary documentation in support of or against the summary judgment motion. If the appellants had evidence which they considered relevant to the will construction issue it was incumbent upon them to submit it in some form permitted by Civ. R. 56 and, although the trial court might consider it not relevant to the issue, it could not exclude it from being thus submitted to the court.

As we will see from our consideration of the third assignment of error extrinsic evidence on such issue would normally not be relevant but under summary judgment procedure the only way it could get into the record for review was by submission by the appellants under Civ. R. 56. Not having done so, the trial court neither excluded them from doing so, nor is there anything in the record to portray the nature of such evidence and thus the thrust thereof.

The second assignment of error is without merit.

### Third Assignment of Error

"Where the facts on which the summary judgment is based show that the testatrix intended her bequest to go to the fund for the construction of a particular church and where, at the time of the testatrix's death, the money was no longer needed for the construction of the church thereby making it impossible to carry out the intent of the testatrix, the trial court erred in determining that the bequest created a general charitable gift for the parish that owned the church."

The judgment herein was rendered on the sustaining of the Archbishop's motion for summary judgment filed after he was permitted to withdraw, and did withdraw

his previous admission of the allegations of the sixth and ninth paragraphs of the complaint. Thus, there being no evidentiary documentation permitted by Civ. R. 56, judgment was rendered wholly on the allegations of the complaint to the extent that they were admitted by the Archbishop's amended answer. The trial court was precluded, therefore, from considering that any specific building fund existed at the time the will was executed but not thereafter.

In effect the appellants are claiming that the gift of the residue was to the church building fund in existence at the time of the execution of the will but used in the construction of the church and not in existence thereafter, thus creating a lapse of the residuary gift in favor of the next of kin.

However, it must first be observed that the bequest was not to the building fund, to trustees for the benefit of the building fund, to or for the benefit of any specific building fund as contrasted with a generic building fund, but was a gift *to a named Church* "for the building fund." In a somewhat similar situation but where the words of limitation were even more specific the Court of Appeals of Madison County said in the case of *Taylor* v. *Dickerson* (1961), 113 Ohio App. 344, 347 [17 O.O.2d 365]:

"For obvious reasons, cases which depend upon the interpretation of certain language are not often favored with conclusive precedent, but all text authorities are in agreement that the mere expression of a particular purpose in a will or deed, without a reverter clause, will not be construed to defeat a fee simple estate. 20 Ohio Jurisprudence (2d), 260, Section 29; 1 Restatement of the Law of Property, 129; 3 Page on Wills, 835, Section 1309; 1 Simes and Smith on Law of Future Interests (2 Ed.), 281, Section 248; 19 American Jurisprudence, 496, Section 36; 116 A.L.R., 76; 1 Hausser, Ohio Practice, Real Property, 118, Section 220."

Similar principles are equally applicable to personal property where, as in this case, the limitation is without ambiguity for a general purpose as contrasted with a specific purpose, and there is no failure of the named charitable beneficiary.

As aptly stated by the trial court in its decision:

"An examination of the entire will discloses the fact that the testatrix was of philanthropic disposition. She clearly intended to make certain specific bequests some of which were to lapse and become a part of her residuary estate in the event that certain of the legatees did not survive her. She clearly intended that the residue of her estate should go to Our Lady of Guadalupe Church.

" 'She had a right to do with her property as she saw fit, and it is, therefore, in my opinion, the duty of the court to uphold her clear purpose and intention, and to sustain the charitable intention of the testatrix * * *.' *Becker* v. *Fisher,* (1925), 112 Ohio St. 284, at page 303.

"Paragraphs one through five in the syllabus in *Townsend's Ex'rs* v. *Townsend, et al.,* (1874), 25 Ohio St. 477, state:

" '1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

" '2. Such intention must be ascertained from the words contained in the will.

" '3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appear from the context that they were used by the testator in some secondary sense.

" '4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.

" '5. If a dispute arises as to the identity named in the will, extrinsic facts may be resorted to, in so far as they can be made ancillary to the right interpreta-

tion of the testator's words, but for no other purpose.'

"Paragraphs one and two in the syllabus in *Carr* v. *Stradley,* (1977), 52 Ohio St. 2d 220 [6 O.O.3d 469], state:

" '1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator. Such intention must be ascertained from the words contained in the will. (Paragraphs one and two of the syllabus in *Townsénd's Exrs.* v. *Townsend,* 25 Ohio St. 477, approved and followed.)

" '2. A testator is never presumed to have died intestate as to any part of the estate to which his attention was seemingly directed, and a court will put such a construction upon equivocal words as to prevent such a result.' "

In our opinion the words at issue of the testatrix were unequivocal, could be properly construed from the four corners of the will alone, without resort to extrinsic evidence. The various premises of the appellants set forth in the third assignment of error are not supported by the record, there was no lapse of the bequest, and the assignment of error is without merit. Cf. *In re Will of Barker* (1955), 162 Ohio St. 531 [60 O.O. 137].

Having found no error prejudicial to the appellants in any of the particulars assigned and argued the judgment of the Probate Division, Court of Common Pleas of Mercer County, must be affirmed.

*Judgment affirmed.*

COLE, P.J., and MILLER, J., concur.