McDONALD & COMPANY SECURITIES, INC., GRADISON DIVISION, Plaintiff,

v.

ALZHEIMER'S DISEASE AND RELATED DISORDERS ASSOCIATION, INC., Appellee; University of Cincinnati College of Medicine Alzheimer's Research Center, Appellant; American Health Assistance Foundation, Appellee; and Betty D. Montgomery, Attorney General, Defendant.

[Cite as *McDonald & Co. Sec., Inc., Gradison Div. v. Alzheimer's Disease & Related Disorders Assn., Inc.* (2000), 140 Ohio App.3d 358.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990810.

Decided July 21, 2000.

360

*Betty D. Montgomery,* Attorney General, and *Graydon, Head & Richey* and *Stephen L. Black,* Special Counsel to the Attorney General, for appellant University of Cincinnati College of Medicine Alzheimer's Research Center.

*Ritter & Randolph, L.L.C.,* and *James R. Schaefer,* for appellee Alzheimer's Disease and Related Disorders, Inc.

*Drew & Ward* and *James H. Coogan,* for appellee American Health Assistance Foundation.

---

DOAN, Presiding Judge.

McDonald & Company Securities, Inc., Gradison Division ("Gradison"), filed a complaint seeking a declaratory judgment in the Probate Division of the Hamilton County Court of Common Pleas. The named defendants were appellant, University of Cincinnati College of Medicine Alzheimer's Research Center ("UC"), and appellees, Alzheimer's Disease and Related Disorders Association, Inc., commonly known as the Alzheimer's Association ("AA"), and American Health Assistance Foundation ("AHAF"). In the complaint, Gradison alleged that it was distributing the proceeds of Fred Weisman's individual retirement account. Weisman had named six charitable beneficiaries to receive the IRA funds upon his death, and the shares for five of those beneficiaries had already been distributed. The sixth beneficiary was "Alzheimer's Research Center," a designation that Gradison has been unable to link with certainty to only one particular organization.

The complaint went on to state that Weisman had mailed a $20 check, made payable to "Alzheimer Disease Assn.". to AA a few years before his death. He had also mailed a $15 check payable to "Alzheimer's Research" and a $25 check payable to "Alzheimer's Disease Research" to AHAF, which sponsors a program called "Alzheimer's Disease Research." It further stated that UC was a "local organization bearing the name identified in the IRA beneficiary designation[,]" although Weisman apparently had no connection to UC during his lifetime. Gradison also stated that it had identified numerous other organizations located in other states involved in Alzheimer's Disease research that had similar names. It asked the court to declare the entity that should receive the proceeds of Weisman's IRA.

UC filed a motion for summary judgment in which it argued that the phrase "Alzheimer's Research Center" was unambiguous, and that the court should hold as a matter of law that it was the organization to which the IRA referred. The probate court overruled the motion, determining that the phrase was ambiguous and that extrinsic evidence was necessary to determine Weisman's intent.

At trial, all three organizations presented evidence of their efforts to further Alzheimer's Disease research, to assist patients with Alzheimer's Disease and their families, and to educate the public. The court also heard the testimony of Robert Schott, a financial advisor from Gradison and Weisman's friend. Schott stated that he and Weisman had spent a couple of hours discussing financial matters and possible charitable beneficiaries. It had been getting late in the day and both men had been anxious to conclude the matter. He testified that Weisman had said that he wanted some of his IRA proceeds to go to "Alzheimer's." Schott did not remember Weisman using the word "research," and he stated that neither he nor Weisman knew that "there were subsections of Alzheimer's." He also stated that he did not know who picked the words "Alzheimer's Research Center" and that he had no indication of what organization Weisman intended. Schott had arranged for a secretary to type the list of beneficiaries and Weisman had signed it in his presence, but the form contained other instances of inexact language.

After the hearing, the probate court again stated that the phrase "Alzheimer's Research Center" was ambiguous because "that particular designation could reasonably apply to any one of a number of organizations, only one of which is a party to this litigation." After considering the extrinsic evidence presented at the hearing, the court found itself unable to "establish with any degree of certainty what organization the decedent intended to support." The court went on to conclude that Weisman had a general charitable intent to "improve the life of those afflicted with Alzheimer's [D]isease, whether by the research of a cure or counseling for those affected by the disease." Applying the *cy pres* doctrine, the

court ordered that each of the three charities that were a party to the action receive one-third of the monies designated in the IRA for "Alzheimer's Research Center." UC has filed a timely appeal from that judgment, which we have *sua sponte* removed from the accelerated calendar.

UC presents four assignments of error for review. In its first assignment of error, it states that the probate court erred in determining that Weisman's beneficiary designation was ambiguous. It argues that it is the only organization using the name "Alzheimer's Research Center," and that, therefore, the beneficiary designation is not ambiguous. This assignment of error is not well taken.

■■ An individual retirement account is, by definition, a type of trust. Section 408(a), Title 26, U.S.Code; *In re Estate of Davis* (1992), 225 Ill.App.3d 998, 1006, 168 Ill.Dec. 40, 47, 589 N.E.2d 154, 161. When construing the provisions of a trust, a court must ascertain, within the bounds of the law, the settlor's intent. When the language of the trust instrument is unambiguous, a court can ascertain the settlor's intent from the express terms of the trust itself, and extrinsic evidence is not admissible to interpret the trust provisions. *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 314, 612 N.E.2d 706, 708; *PNC Bank, N.A. v. Camping & Edn. Foundation* (Mar. 31, 2000), Hamilton App. No. C–990690, unreported, 2000 WL 331635. However, where ambiguity exists or the settlor's intent is unclear, a court may look to extrinsic evidence to determine the settlor's intent. *Craft v. Shroyer* (1947), 81 Ohio App. 253, 258, 37 O.O. 77, 79–80, 74 N.E.2d 589, 592; *Lourdes College of Sylvania v. Bishop* (C.P.1997), 94 Ohio Misc.2d 51, 57, 703 N.E.2d 362, 366; *Woodward v. Ameritrust Co.* (C.A.6, 1984), 751 F.2d 157, 161; *PNC Bank, supra.*

■■ The issue of whether the language in a document is ambiguous is an issue of law that an appellate court will review *de novo*. *Nationwide Mut. Fire Ins. Co. v. Guman Brothers Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686. We agree with the probate court's holding that the phrase "Alzheimer's Research Center" is ambiguous because it does not, standing alone, identify any particular entity. No organization solely uses the name "Alzheimer's Research Center." Although UC uses those words as part of its name, it has never identified itself solely using that phrase. It refers to itself as being part of the University of Cincinnati or the University of Cincinnati College of Medicine. Further, other organizations also use the phrase as part of their names. As the trial court stated, "that particular designation could reasonably apply to any one of a number of organizations[.]" Under the circumstances, we cannot conclude that the phrase "Alzheimer's Research Center" is unambiguous and that it applies to UC as a matter of law. Consequently, we hold that the probate court did not err in admitting extrinsic evidence to determine Weisman's intent, and we overrule UC's first assignment of error.

■ In its second assignment of error, UC argues that the probate court erred by failing to properly determine Weisman's intent. It claims that even if the phrase "Alzheimer's Research Center" is ambiguous, the probate court failed to give effect to the language Weisman used and ignored the evidence that showed that UC was the only organization before the court that actually operated an Alzheimer's research center. We find that this assignment of error is not well taken.

■ The probate court found that the evidence did not show what organization Weisman had intended for his IRA funds to benefit, but that he had a general intent to help patients with Alzheimer's Disease. Essentially, UC is arguing that the evidence does not support these findings. However, the probate court clearly believed Schott's testimony that Weisman had merely said that he wanted money to go to "Alzheimer's" and that he never spoke the words "research" and "center." In the trial of any case, civil or criminal, the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact to decide. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Further, Weisman never had any relationship with UC, and the evidence did not support the conclusion that he would specifically have wanted the funds to be given to UC. To the contrary, in his lifetime, he had given some monies, however meager, to the other organizations, but none to UC. The evidence also showed that all three of the organizations participating in the declaratory judgment action funded or supported Alzheimer's Disease research in some way and that giving money to any or all of them would further the goal of aiding patients with Alzheimer's Disease. Under the circumstances, we hold that competent, credible evidence going to all essential elements of the case supported the probate court's findings, and, therefore, we will not reverse its decision as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Accordingly, we overrule UC's second assignment of error.

■ In its third assignment of error, UC states that that the probate court erred in allowing extrinsic evidence to contradict or vary the language of the beneficiary form. It contends that extrinsic evidence is admissible only to supplement and not to vary or contradict the language of an agreement. This assignment of error is not well taken.

■ UC relies upon the parol evidence rule from contract law, which states that when parties have expressed their intent in a writing, extrinsic evidence is not admissible for the purpose of varying or contradicting the writing. *Ed*

*Schory & Sons, Inc. v. Society Natl. Bank.* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074, 1080. Even if a writing is ambiguous, parol evidence is admissible to interpret, but not to contradict, the express language. *Pharmacia Hepar, Inc. v. Franklin* (1996), 111 Ohio App.3d 468, 475, 676 N.E.2d 587, 592; *Ohio Historical Society v. General Maintenance & Engineering Co.* (1989), 65 Ohio App.3d 139, 146, 583 N.E.2d 340, 344.

■ UC contends that the probate court erred in relying on Schott's testimony that Weisman had said he wanted to name "Alzheimer's" as a beneficiary, but that he had never used the word "research." It argues that Schott's testimony contradicted the express language of the beneficiary designation form that used the words "Alzheimer's Research Center," which Weisman had read and signed. First, we note that UC never objected to Schott's testimony, and, therefore, it waived any error related to that testimony. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124–125, 322 N.E.2d 629, 630; *Sandusky Packing Co. v. Hoffman* (1935), 129 Ohio St. 300, 2 O.O. 291, 195 N.E. 483, syllabus.

Further, UC's argument misapprehends the probate court's ruling. The court did not simply ignore the words "research" and "center." It stated that it could not "establish with any degree of certainty what organization the decedent intended to support." It did find, however, that he had demonstrated a general intent to benefit patients with Alzheimer's Disease "in the same general terms that a testamentary bequest to 'helping the poor' or 'fighting poverty' would logically be construed." It went on to state that "[f]aced with such imprecise language, the designation of 'Alzheimer's Research Center' would normally fail for being vague."

■ However, the law favors charitable bequests, and they are liberally construed to accomplish the testator or grantor's purpose. ·*Wills v. Union Savings & Trust Co.* (1982), 69 Ohio St.2d 382, 386, 23 O.O.3d 350, 352–353, 433 N.E.2d 152, 156; *Becker v. Fisher* (1925), 112 Ohio St. 284, 294–295, 147 N.E. 744, 747; *Hess v. Sommers* (1982), 4 Ohio App.3d 281, 285, 4 OBR 500, 504–505, 448 N.E.2d 494, 498–499. Consequently, the probate court attempted to accomplish the testator's general intent to help those with Alzheimer's Disease by giving the money to three worthy organizations, all of which fund or support Alzheimer's Disease research in some way, in addition to assisting patients and their families. The probate court did not use parol evidence to vary or contradict the words of the beneficiary designation form, and we, therefore, overrule UC's third assignment of error.

In its fourth assignment of error, UC states that the trial court erred in applying the *cy pres* doctrine. It contends that the court had a duty to identify

an organization that could fulfill Weisman's manifest intent and that the probate court abused its discretion by splitting the fund three ways. While we agree that the court erred in applying the *cy pres* doctrine, we cannot hold that the court erred in dividing the fund between the three claimants. Consequently, we find that this assignment of error is not well taken.

The *cy pres* doctrine is a saving device applied to charitable trusts. When the charitable purpose is originally or later becomes impossible, inexpedient or impracticable to fulfill, equity will substitute another charitable object that approaches the original purpose as closely as possible. *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.* (1997), 79 Ohio St.3d 98, 106, 679 N.E.2d 1084, 1091; *Craft, supra,* at 272–273, 37 O.O. at 85, 74 N.E.2d at 589. In this case, the settlor's charitable intent did not become impossible, inexpedient or impracticable to fulfill, as in the situation where a specifically named beneficiary has ceased to exist as an organization. The court simply could not determine the settlor's specific charitable intent as to the organization he intended to benefit, although it did determine the settlor's general charitable intent. Under these circumstances, the *cy pres* doctrine does not apply.

Nevertheless, R.C. 2101.24(C) provides that "[t]he probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." This statute authorizes any relief required to fully adjudicate the subject matter within the probate court's jurisdiction. *State ex rel. Lewis v. Moser* (1995), 72 Ohio St.3d 25, 29, 647 N.E.2d 155, 157; *Bank One Trust Co. v. Nye* (P.C.1998), 91 Ohio Misc.2d 204, 206–207, 698 N.E.2d 519, 520–521; *Goff v. Ameritrust Co., N.A.* (May 5, 1994), Cuyahoga App. Nos. 65196 and 66016, unreported, 1994 WL 173544.

Where the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the outcome of each case individually. *In re Estate of Cogan* (1997), 123 Ohio App.3d 186, 188, 703 N.E.2d 858, 860. "In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy." *Winchell v. Burch* (1996), 116 Ohio App.3d 555, 561, 688 N.E.2d 1053, 1057. It has the power to fashion any remedy necessary and appropriate to do justice in a particular case. *Carter–Jones Lumber Co. v. Dixie Distrib. Co.* (C.A.6, 1999), 166 F.3d 840, 846.

In this case, the probate court's decision to divide the contested funds equally among the three claimants, each of which promotes the general charitable intent of benefiting patients with Alzheimer's Disease, was fair and equitable. Actually, UC has the weakest claim to the disputed funds because the other two organizations had a prior relationship with Weisman, while UC did not. Under

the circumstances, we cannot hold that the trial court's decision was so arbitrary, unreasonable or unconscionable as to connote an abuse of discretion. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 5 OBR 481, 481–482, 450 N.E.2d 1140, 1142. Accordingly, we overrule UC's fourth assignment of error and affirm the probate court's judgment.

*Judgment affirmed.*

WINKLER, J., concurs.

PAINTER, J., concurs separately.

PAINTER, J., concurring.

I concur in Judge Doan's excellent analysis. To me, this case exemplifies the problems inherent in having assets pass by sloppily drafted instruments. The public should realize the danger in attempting to have a substantial portion of their wealth pass to their heirs or beneficiaries by IRA accounts, brokerage accounts, insurance policies, bank-deposit accounts, and the like. Often, as here, these documents are not prepared by a lawyer, not subject to the legal formalities of a will, and not artfully completed. For someone with the substantial assets involved here, an estate plan would have been advisable, so an attorney could have reviewed all documents such as this, avoiding ambiguity and its attendant costs, and ensuring that the decedent's wishes were followed.