DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} This is a fight over a dead woman's money. When Barbara Kelly opened an individual retirement account at May Associates Federal Credit Union, she designated her nephew, Richard Wachter, as the account's beneficiary. When her daughter, Janice Kelly, returned to Ohio after having lived out of state, Barbara telephoned May Associates and told a teller to make Janice the beneficiary. The teller completed a change of beneficiary form, but Barbara never signed it. Barbara is now dead, and the account is worth approximately $130,000. *Page 2 
 {¶ 2} The trial court determined that Janice is entitled to the money in the account. Richard has argued that the trial court: (1) incorrectly determined that May Associates properly waived its requirement that Barbara sign the change of beneficiary form; (2) incorrectly considered the teller's testimony about her conversation with Barbara and the unsigned change of beneficiary form in ruling on Janice's motion for summary judgment because, according to him, both were inadmissible hearsay; (3) incorrectly determined that Barbara's intent that Janice be the beneficiary of the individual retirement account was clear; and (4) incorrectly determined that May Associates was not liable to him for breach of contract, breach of fiduciary duty, interference with expectancy of inheritance, and attorney fees. This Court affirms the trial court's judgment because: (1) by filing a request for interpleader, May Associates waived the requirement that Barbara sign the change of beneficiary form; (2) the teller's testimony and the change of beneficiary form had independent legal significance and, therefore, were not hearsay; (3) Barbara communicated to May Associates her "clearly expressed intent" that Janice be the beneficiary of her individual retirement account; and (4) Richard's breach of contract, breach of fiduciary duty, interference with expectancy of inheritance, and attorney fee claims are all based on the incorrect premise that Barbara's individual retirement account is a trust and, therefore, fail. *Page 3 
 BACKGROUND {¶ 3} Barbara Kelly's sister was Richard Wachter's mother. After Barbara's sister died, Barbara grew closer to Richard. He described their relationship as having become more like that between a mother and son than that between an aunt and nephew.
 {¶ 4} In 1992, Barbara opened an individual retirement account at May Associates. At that time, Barbara's daughter, Janice Kelly, was living out-of-state, and Barbara named Richard as the beneficiary of the account. She also granted him a general power of attorney and named him co-owner of a number of certificates of deposit she had at May Associates.
 {¶ 5} The form Barbara completed when she opened her individual retirement account provided that she could change the beneficiary in writing: "You have the right to change this designation of beneficiary at any time by writing to the Custodian." In 1995, May Associates amended the terms of Barbara's individual retirement account to provide that she could only change the beneficiary by completing and signing a form that it would provide her for that purpose:
 You may name one or more beneficiaries to receive your IRA after your death. You may thereafter change your beneficiaries at any time. Your original designation and any subsequent changes of your beneficiaries can only be made by completing and signing an IRA beneficiary designation form that we will provide to you upon request; and we will not be responsible for following instructions on signature cards or on any other documents. A beneficiary *Page 4 
designation remains effective after the amendment of the terms of this agreement.
 {¶ 6} Sometime after 1992, Janice returned to Ohio, and Barbara gave her a power of attorney, revoking the one she had given Richard. Barbara also named Janice co-owner of her certificates of deposit and told Richard that she was going to make Janice the beneficiary of her individual retirement account.
 {¶ 7} On November 19, 1998, Barbara telephoned May Associates for the purpose of making Janice the beneficiary of her individual retirement account. The teller with whom she spoke filled in information on a change of beneficiary form. The teller did not tell Barbara that the form needed to be signed. Instead, she wrote "per member" on the signature line. She sent a copy of the form to Barbara and placed a copy in the file May Associates kept regarding Barbara's accounts. Someone at May Associates apparently sent a third copy to the company that was then the outside administrator of individual retirement accounts for May Associates.
 {¶ 8} In June 2003, Barbara again gave Richard her power of attorney, revoking the one she had given Janice. The following month, July 2003, Barbara and Richard signed an "Account Ownership" form. Although the form did not designate the accounts to which it was to apply or indicate the type of ownership desired, May Associates apparently treated it as changing all of Barbara's accounts, except her individual retirement account, to joint accounts with Richard having a right of survivorship. *Page 5 
 {¶ 9} Barbara died on August 17, 2003. By that time, May Associates was using a different outside administrator for its individual retirement accounts than it had been using in 1998 when Barbara had told the teller she wanted to change the beneficiary to Janice. The new administrator apparently had information regarding Barbara's original designation of Richard as the account's beneficiary, but no information regarding the form the teller completed in 1998. The administrator told Richard he was the beneficiary of the account and provided him a form for use in claiming the funds in the account. Richard completed and submitted the form.
 {¶ 10} Janice found a copy of the 1998 change of beneficiary form among Barbara's papers. Accordingly, she also claimed the funds in the account.
 {¶ 11} May Associates filed an interpleader action against Richard and Janice, which it eventually dismissed without prejudice. Janice than filed the complaint in this case against May Associates and Richard. She sought a declaratory judgment that she was entitled to the funds in the account and alleged breach of contract and negligence claims against May Associates. Richard filed a counterclaim, alleging that Janice had interfered with his lawful possession of the funds in the account. He also filed a cross-claim against May Associates by which he alleged that it had breached a contractual duty to convey the funds to him. May Associates filed a counterclaim against Janice and cross-claim against Richard, interpleading the funds in the account. *Page 6 
 {¶ 12} Janice, Richard, and May Associates all moved for summary judgment. The trial court determined that Janice was entitled to the money in Barbara's account. It denied Richard summary judgment and granted summary judgment to Janice and May Associates. Richard appealed.
 MAY ASSOCIATES' WAIVER OF THE SIGNATURE REQUIREMENT {¶ 13} Like the individual retirement account at issue in this case, life insurance policies typically include a procedure for designating and changing beneficiaries. It has long been the rule in Ohio that those procedures are intended to protect the insurer from duplicate liability and the insurer is free to waive them. Rindlaub v. Traveler's Ins.Co., 175 Ohio St. 303, 305 (1963); Atkinson v. Metropolitan Life Ins.Co., 114 Ohio St. 109, syllabus paragraph four (1926). Further, if, in the face of conflicting claims to insurance proceeds, the insurer interpleads those proceeds, it has waived any interest in the resolution of the claims, including enforcement of the procedure set forth in its policy for designating and changing beneficiaries. Rindlaub,175 Ohio St. at 305; Atkinson, 114 Ohio St. 109, at syllabus paragraph five. In such a case, if the insured communicated to the insurer her "clearly expressed intent" to change beneficiaries, the proceeds will be paid to the newly designated beneficiary rather than the originally designated beneficiary even though the insured failed to comply with the process set forth in the policy. Rindlaub, 175 Ohio St. 303, at syllabus paragraph two. *Page 7 
 {¶ 14} Richard has argued that the law applicable to insurance policies is not applicable to individual retirement accounts. His first assignment of error is that the trial court incorrectly determined that May Associates, by interpleading the funds in the individual retirement account, properly waived its requirement that Barbara sign the change of beneficiary form. According to him, the individual retirement account is a trust and, as the originally designated beneficiary, he had a vested interest in the money in the account that prevented May Associates from waiving its change of beneficiary procedure. Since this assignment of error presents a legal question, this Court's standard of review isde novo. Akron-Canton Waste Oil Inc. v. Safety-Kleen Oil Serv.Inc., 81 Ohio App. 3d 591, 602 (1992).
 {¶ 15} Section 408(a) of the Internal Revenue Code provides that "the term `individual retirement account' means a trust. . . ."26 U.S.C. 408(a). Further, as noted by Richard, in First Nat'l Bank of Cincinnativ. Tenney, 165 Ohio St. 513, syllabus paragraph two (1956), the Ohio Supreme Court held that an inter vivos trust "creates in the remainderman a vested interest subject to defeasance by the exercise of the power to revoke."
 {¶ 16} Richard has also pointed out that, in McDonald Co. Sec. Inc.v. Alzheimer's Disease and Related Disorders Ass'n Inc.,140 Ohio App. 3d 358, 363 (2000), the First District Court of Appeals cited Section408(a) of the Internal Revenue Code for the proposition that an individual retirement account is a trust. *Page 8 
The issue before the court in that case, however, was not whether, by filing an interpleader action, the custodian of an individual retirement account waives compliance with its change of beneficiary procedure. Rather, the court had to determine who should receive funds in an account when no entity existed with the name the account owner had designated as the beneficiary. It is true that the court cited Section 408(a) and wrote that the individual retirement account was a trust, but it only did so as a prelude to the unremarkable holding that, when there is an ambiguity regarding the intended beneficiary, "a court must ascertain, within the bounds of the law, the settlor's intent."Id. In this case, Richard has not argued that Barbara's intent should control. Rather, he has argued that, even though May Associates wishes to waive application of its change of beneficiary procedure in order that Barbara's stated desire to change beneficiaries can be accomplished, her stated desire should be frustrated.
 {¶ 17} Section 408(a) of the Internal Revenue Code specifically provides that an individual retirement account is a trust only "[f]or purposes of this section." The determination of whether an individual retirement account is a trust for other than tax purposes depends on whether it satisfies the definition of a trust under Ohio law. SeeIn re Haney, 316 B.R. 827, 829-830 (E.D. PA. 2004). As noted by the Ohio Supreme Court in First Nat'l Bank of Cincinnati v. Tenney,165 Ohio St. 513, 518 (1956), the very case relied upon by Richard, "[i]n order for a trust to be a trust, the legal title of the res must immediately pass to the trustee. . . . *Page 9 
"May Associates was not a trustee and legal title to the money in Barbara's account remained in her. The account, therefore, is not a trust under Ohio law, and Richard's argument collapses. To the extentMcDonald Co. Sec. Inc. v. Alzheimer's Disease and Related DisordersAss'n Inc., 140 Ohio App. 3d 358 (2000), held otherwise, this Court declines to follow it.
 {¶ 18} In Matter of Estate of Trigoboff, 669 N.Y.S.2d 185 (Sur.Ct. 1998), the New York Surrogate's Court recognized that, just as change of beneficiary procedures in insurance policies are for protection of insurers, change of beneficiary procedures applicable to individual retirement accounts are for protection of the custodians of those accounts. A custodian of an individual retirement account who files an interpleader action when there is a dispute between potential beneficiaries of that account, just like an insurer who files an interpleader action under similar circumstances, waives compliance with its change of beneficiary procedure. By filing its counterclaim and cross-claim for interpleader, May Associates waived the requirement that Barbara sign the change of beneficiary form. Richard's first assignment of error is overruled.
 THE HEARSAY RULE {¶ 19} Richard's second assignment of error is that the trial court incorrectly considered the teller's testimony regarding her conversation with Barbara and the unsigned change of beneficiary form in ruling on Janice's motion for summary judgment because, according to him, both were inadmissible hearsay. *Page 10 
Again, since this assignment of error presents a legal question, this Court's standard of review is de novo. Akron-Canton Waste Oil Inc. v.Safety-Kleen Oil Serv. Inc., 81 Ohio App. 3d 591, 602 (1992).
 {¶ 20} The trial court determined that the teller's testimony and the form were hearsay, but were admissible as exceptions to the hearsay rule under Rules 803(3) and 803(6) of the Ohio Rules of Evidence. Although the trial court's conclusion that the teller's testimony and the form were admissible was correct, its reliance on 803(3) and 803(6) was misplaced. In fact, neither the teller's testimony nor the form is hearsay. The trial court's incorrect analysis, however, does not mean that its judgment must be reversed. When a trial court reaches a correct conclusion, even when it does so for incorrect reasons, its judgment must be affirmed. See, e.g., State v. Campbell, 90 Ohio St. 3d 320, 329
(2000).
 {¶ 21} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ohio Rule of Evidence 801(C). A familiar refrain of proponents of out of court statements is that those statements are not offered for the truth of the matter asserted, but only to show that the statements were made. Usually just the opposite is true. In this case, however, the teller's testimony and the form were not offered to prove that Barbara actually wanted to change the beneficiary of her individual retirement account to Janice, but to show that she told May Associates she wanted to change the beneficiary to Janice. *Page 11 
 {¶ 22} Words that have independent legal significance, sometimes referred to as verbal acts, are relevant without regard to their truth. 1 Glen Weissenberger, Ohio Evidence, Section 801.6 (1995). As explained by the Tenth District Court of Appeals in Wade v. Communications Workersof Am., 10th Dist. No. 84AP-57, 1985 WL 10178 at *4 (Sept. 24, 1985), spoken words that form a contract are admissible, not for the truth of what they assert, but because they have independent legal significance:
 [S]ome utterances do not constitute assertions but, instead, constitute what has been referred to as verbal acts, being the uttering of words which have independent legal significance under substantive law, such as words constituting the offer and acceptance of a contract. Thus, evidence of the utterance of the words is admissible not to show the truth of any matter asserted but, instead, that the words were uttered and, thus, carry with them the legal significance under substantive law, such as the entering into of a contract.
In Rindlaub v. Travelers Ins. Co., 175 Ohio St. 303, syllabus paragraph two (1963), the Ohio Supreme Court held that, when an insured "communicated to the insurer his clearly expressed intent" to change beneficiaries and the insurer filed an interpleader action, the insured's "expressed intent" would be determinative. Barbara's statement to the teller is admissible in this case, not for the purpose of proving that she, in fact, wanted to make Janice the beneficiary of the account, but rather, to show that she had "communicated to [May Associates] [her] clearly expressed intent" to do so. It was not, therefore, hearsay and was properly considered by the trial court. *Page 12 
 {¶ 23} Similarly, the change of beneficiary form was not important for the truth of what it contained, but rather as evidence that May Associates treated Barbara's telephone conversation with the teller as her "clearly expressed intent" to change beneficiaries. The fact that Janice found a copy of the form among Barbara's papers tended to prove that Barbara believed she had done all that was necessary to change the beneficiary from Richard to Janice.
 {¶ 24} In fact, for purposes of the hearsay rule, the teller's testimony and the form were no different from the original beneficiary designation upon which Richard has based his claim in this case. Just as that designation has independent legal significance as part of Barbara's agreement with May Associates, so do her statements to the teller and the form completed by the teller based on those statements. Richard's second assignment of error is overruled.
 THE TRIAL COURT'S SUMMARY JUDGMENT {¶ 25} Richard's third assignment of error is that the trial court incorrectly determined that Barbara's intent to make Janice the beneficiary of her individual retirement account was clear. In reviewing a trial court's order ruling on a motion for summary judgment, this Court applies the same standard that the trial court was required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co.,66 Ohio App. 3d 826, 829 (1990). *Page 13 
 {¶ 26} Most of Richard's argument in support of this assignment of error is an attack on the credibility of the teller's testimony that May Associates' procedure permitted Barbara to change her beneficiary over the telephone and did not require her signature on the change of beneficiary form. As discussed previously, however, May Associates' change of beneficiary procedure, whatever that procedure was, was for its benefit, and it waived that procedure by filing its interpleader counterclaim and cross-claim. To the extent that there was a genuine issue regarding May Associates' change of beneficiary procedure, therefore, that issue was not material.
 {¶ 27} Richard has not pointed to any evidence that tended to prove that Barbara had not, in fact, telephoned the teller and told her she wanted Janice to be the beneficiary of her individual retirement account. In the absence of such evidence, there is not a genuine issue of fact regarding whether Barbara made that telephone call. Further, the teller testified at her deposition that Barbara told her that her daughter had come back to take care of her and that she wanted her to be the beneficiary of her individual retirement account. Based on that testimony, coupled with the change of beneficiary form completed by the teller, there is no genuine issue of fact regarding whether Barbara communicated to May Associates her "clearly expressed intent" to change beneficiaries.
 {¶ 28} Richard has also argued that, shortly before her death, Barbara again changed the beneficiary of her individual retirement account, this time back to *Page 14 
him. As support for this argument, he has pointed to the Account Ownership form he and Barbara signed in July 2003, along with a September 2003 list of Barbara's accounts on May Associates letterhead. The list, which included Barbara's individual retirement account, was captioned with both Barbara's and Richard's names.
 {¶ 29} As noted previously, the Account Ownership form did not designate the accounts to which it was to apply and failed to provide the type of ownership desired. May Associates apparently treated it as changing all of Barbara's accounts, except the individual retirement account, to joint accounts with Richard having a right of survivorship. Richard failed to present any evidence that, at the time Barbara signed the Account Ownership form, she communicated to May Associates her "clearly expressed intent" to change the beneficiary of her individual retirement account back to him.
 {¶ 30} According to Richard, the inclusion of his name on the list that included the individual retirement account permits an inference that May Associates thought Richard was the beneficiary. Even if May Associates had thought he was the beneficiary, however, without evidence that Barbara had communicated to it her "clearly expressed intent" to change the beneficiary of her individual retirement account back to Richard, he would not be entitled to the money in that account. Richard's third assignment of error is overruled. *Page 15 
 RICHARD'S OTHER CLAIMS {¶ 31} Richard's final assignment of error is that the trial court incorrectly determined that May Associates is not liable to him for breach of contract, breach of fiduciary duty, interference with expectancy of inheritance, and attorney fees. Richard's cross-claim against May Associates did not include causes of action for breach of fiduciary duty or interference with expectancy of inheritance. He only alleged a breach of contract claim. Further, all of his arguments in support of this assignment of error are based on the premise that Barbara's individual retirement account was a trust and that he, as the original beneficiary, had a vested interest that prevented May Associates from waiving its change of beneficiary procedure. Inasmuch as this Court has concluded that the individual retirement account was not a trust under Ohio law and that Richard did not have a vested interest that prevented May Associates from waiving its change of beneficiary procedure, his arguments in support of this assignment of error fail. Richard's fourth assignment of error is overruled.
 CONCLUSION {¶ 32} Richard's assignments of error are overruled. The trial court's judgment is affirmed.
 Judgment affirmed. *Page 16 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.