[Cite as *LeBlanc v. Wells Fargo Advisors, L.L.C.*, 196 Ohio App.3d 213, 2011-Ohio-5553.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| LeBLANC et al., | : | |
| | : | |
| Appellants, | : | Appellate Case No. 24348 |
| | : | |
| v. | : | Trial Court Case No. 10-CV-1926 |
| | : | |
| WELLS FARGO ADVISORS, L.L.C. | : | |
| et al., | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Appellees. | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on the 28th day of October, 2011.

· · · · · · · · · ·

Brannon & Associates and David D. Brannon, for appellants.

Dungan & LeFevre Co., L.P.A., and James D. Brookshire, for appellee Cynthia Burchfield.

Ulmer & Berne, L.L.P., and Pamela K. Ginsburg, for appellee Wells Fargo Advisors, L.L.C.

Paul Courtney, for appellee Bruce Leland.

· · · · · · · · · · · ·

HALL, Judge.

{¶ 1} Appellants Lori LeBlanc and Gloria Welch appeal from the trial court's decision and entry sustaining a cross motion for summary judgment filed by appellee Cynthia Burchfield. The motion concerned, among other things, the disposition of individual

retirement accounts ("IRAs") held in the name of John Burchfield by the custodian, Wells Fargo.

{¶ 2} LeBlanc and Welch advance two assignments of error on appeal. First, they contend that the trial court erred in declaring John's two IRAs to be marital property when, they argue, one of them was separate property and the other one was, at most, commingled property.[1] Second, they claim that the trial court erred in refusing to find that IRA custodian Wells Fargo Advisers waived compliance with its change-of-beneficiary procedure by interpleading the disputed funds to the court.

{¶ 3} The record reflects that John married Cynthia on May 5, 2007. Prior to the marriage, John maintained two IRA accounts. A few days before the marriage, the first account had a closing value of $250,313.33, and the second account had a closing value of $15,334.98. When John originally opened the accounts, he designated Gloria Welch, his mother, and Bruce Leland, his stepfather, as beneficiaries. Shortly before his marriage, however, John named Cynthia as the beneficiary on both IRAs.

{¶ 4} On October 28, 2009, John sent his Wells Fargo financial adviser, Aaron Michael, an e-mail stating that he and Cynthia were getting divorced and requesting paperwork to change his IRAs. Michael responded by e-mail, asking John to let him know whom John wanted as the beneficiary. John subsequently spoke to Michael by phone and explained whom he wanted to be the new beneficiaries. Michael had the forms completed with Welch and Leland as primary beneficiaries, in the amounts of 75 percent and 25 percent

---

[1] For purposes of clarity, we refer to John and Cynthia Burchfield by their first names.

respectively.[2]  Lori LeBlanc, John's sister, was listed as the contingent beneficiary.  Michael proceeded to send John these necessary change-of-beneficiary forms.  Before doing so, Michael predated them November 2, 2009, as he believed that John would return them to him by then.

{¶ 5}  Cynthia served John with a complaint for divorce and a restraining order on November 5, 2009.  The restraining order prohibited John from, inter alia, transferring any accounts or any other interest in any asset.  Around the same time, John spoke to Michael again and advised him that the change-of-beneficiary forms were "taken care of."  Michael assumed this meant that John had mailed the forms back to Wells Fargo.

{¶ 6}  John committed suicide on December 16, 2009.  After his death, Michael and one of John's co-workers, Jeff Miller, discovered the signed and completed change-of-beneficiary forms in an envelope among John's personal papers.  Michael gave the forms to his manager at Wells Fargo.  A dispute then arose regarding the beneficiary of the IRAs.

{¶ 7}  Welch filed the present action in March 2010.  Joining her as a plaintiff was LeBlanc, who was acting as executor of John's estate.  In their complaint, LeBlanc and Welch sought, among other things, a declaratory judgment enforcing the change-of-beneficiary forms.  Cynthia filed a counterclaim, seeking a determination that she was the proper beneficiary of the IRAs.  Wells Fargo, which also had been named a party, originally filed its answer.  Shortly thereafter, Wells Fargo was granted leave to file an amended answer.  It filed an answer and a counterclaim and cross-claim for interpleader on May 27, 2010.  Therein, Wells

---

[2] Bruce Leland has since disclaimed any interest in probate or nonprobate assets of the decedent, and he was dismissed from the case.

Fargo asserted no interest in the dispute and offered to hold the IRA funds in trust or to turn them over to the court pending resolution of the matter.

{¶ 8}   LeBlanc and Welch moved for partial summary judgment in July 2010.   Their motion addressed only the proper beneficiary of the IRAs.   Cynthia responded with a September 2010 cross-motion for summary judgment on all issues, including the beneficiary of the IRAs.   On November 16, 2010, the trial court filed separate entries denying the motion filed by LeBlanc and Welch and sustaining the motion filed by Cynthia.[3]   With regard to the two IRAs, the trial court held that Cynthia was the sole beneficiary of them.   In reaching this conclusion, the trial court found that John's change-of-beneficiary forms were of no legal effect because he had failed to comply with Wells Fargo's written policy, which required them to be returned to the company.[4]   Furthermore, with regard to the larger of the two IRAs, the trial court held that it qualified as marital property because John had deposited $74,062.47 into it during the marriage.   Based on its determination that the larger IRA was marital property, the trial court reasoned that Wells Fargo could not waive compliance with its change-of-beneficiary procedure or actually change the beneficiary without Cynthia's consent, which did not exist.   This timely appeal followed.

{¶ 9}   In their first assignment of error, LeBlanc and Welch contend that the trial court erred in declaring the IRAs to be marital property when the smaller one was separate property and the larger one was, at most, commingled property.

---

[3]Although the trial court resolved other issues, they are not pertinent to the present appeal, which concerns only the disposition of the IRA funds.

[4]The trial court determined that John's right to change his beneficiary terminated upon his death. Therefore, the trial court found it irrelevant that the change-of-beneficiary forms eventually found their way to Wells Fargo after John committed suicide.

{¶ 10} Upon review, we find that characterization of the IRA accounts as marital or nonmarital property is applicable only in domestic-relations cases, which the present case is not. First, if a death of either party occurs before a decision is made in a divorce action, the action abates. *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 99, and *Porter v. Lerch* (1934), 129 Ohio St. 47, 56. Therefore, there is no active domestic-relations case. Second, the statute that defines what is marital and separate property is limited by its terms to domestic-relations courts and their proceedings. R.C. 3105.171, entitled "Division of marital property; separate property," is prefaced, "(A) As used in this section," thereby limiting applicability to domestic-relations matters. The statute further provides: "(B) In divorce proceedings, the court shall, and in legal separation proceedings * * *, the court may, determine what constitutes marital property and what constitutes separate property." Id. Nothing in the domestic-relations statutory scheme indicates that it would be applicable to determination of marital or separate property outside the domestic-relations context. We therefore determine that those statutes are inapplicable to the dispute before us. To the extent that the appellants' first assignment of error asserts that the trial court erred by determining that the IRA accounts were partially marital property, we agree, not because the court should have decided differently that the accounts were separate property, but because R.C. 3105.171 does not apply. Nevertheless, to determine the correct beneficiaries to receive John's property following his death, it is unnecessary to decide whether the IRA funds were separate or marital property. Therefore, any error made by analyzing the IRAs as marital property is not dispositive of this appeal. The first assignment of error is overruled.

{¶ 11} In their second assignment of error, LeBlanc and Welch claim that the trial

court erred in refusing to find that Wells Fargo waived compliance with its change-of-beneficiary procedure by interpleading the disputed funds to the court.

{¶ 12} This argument stems from John's failure to return the two change-of-beneficiary forms to Wells Fargo prior to his death. Under Wells Fargo's written policy, a change-of-beneficiary form is not effective until after it is completed, signed, and delivered to the company. Whether the decedent is the one who signed his name to the forms is a matter of some dispute. But construed most strongly in favor of LeBlanc and Welch, the evidence could suggest, and for our analysis we will assume, that John completed and signed the forms. There is no dispute, and no genuine issue of fact, that the forms were not returned to Wells Fargo before John died. The unreturned forms were found after his death in an envelope among his personal belongings. The issue before us is whether the unreturned forms, or any expression of intent to change the beneficiary, had any legal significance in light of Wells Fargo's change-of-beneficiary policy, which required the forms to be returned before the beneficiary would be changed.

{¶ 13} We believe that the trial court correctly granted summary judgment to Cynthia Burchfield because the decedent did not comply with the contract provision for change of beneficiary, and even if the contractual method for change of beneficiary is deemed waived, the decedent did not substantially comply with the provision. As we will explain below, substantial compliance with the contract provisions remains necessary, as part of an "intent of the decedent" analysis, even when actual compliance has been waived. Accordingly, we will affirm the judgment of the trial court.

{¶ 14} The first step in our analysis is to examine the nature of the IRA accounts to

determine what rules apply. The appellants suggest that the case law developed to interpret the change of beneficiaries for life insurance policies should apply to these IRA accounts. They refer to *Kelly v. May Assocs. Fed. Credit Union*, Summit App. No. 23423, 2008-Ohio-1507, in which the Ninth District Court of Appeals applied caselaw analysis applicable to life insurance policies to an upon-death transfer of an IRA. But a life insurance policy is a contract where, upon the death of the insured, the company pays a death benefit to the beneficiary. Conversely, an IRA is a tax-advantaged present asset of the owner.[5] Ordinarily, the manner in which a decedent directs the transfer of an asset upon death is by his or her last will and testament. The statute of wills, Chapter 2107 of the Revised Code, has specific formalities. Unless there is an exception or exclusion, upon death, an asset becomes part of a decedent's estate for intestate or testamentary distribution. It is only by the recognition of certain nontestamentary transfers that assets transfer outside a decedent's estate.

{¶ 15} Common methods to "avoid probate" include joint tenants with right of survivorship ("JTWROS"), payable-on-death accounts ("POD"), or trust arrangements. In Ohio, joint and survivorship accounts avoid estate inclusion, and therefore the formalities of the statute of wills, by case law. Joint-and-survivorship account validity, as a mechanism for an upon-death transfer, was first recognized in *Cleveland Trust Co. v. Scobie* (1926), 114 Ohio St. 241, based upon a contract-law analysis. See also *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 604. Those accounts transfer to the survivor. But an IRA account cannot be held as a joint tenant because that would destroy the "individual" aspect and the tax advantages of the

---

[5] We recognize that there are now many and varied financial products that come under the heading of "life insurance." There are also varied forms of life insurance policies, some of which have a cash value that the owner of the policy can withdraw or borrow against. Nevertheless, we draw a distinction between life insurance and a current asset.

account.[6]   A POD account statutorily avoids inclusion of the asset in a decedent's estate, and the account is paid upon death to the designated beneficiary.   The POD statute specifically avoids the formalities required by the statute of wills.   See R.C. 2131.10 (allowing POD accounts "notwithstanding any provisions to the contrary in Chapter 2107. of the Revised Code").   But the POD account statute applies only to a "bank, building and loan or savings and loan association, credit union, or society for savings."   Id. Wells Fargo is none of these entities, and John's "account" is not a traditional cash asset.   It is a collection of securities.   A properly created inter vivos trust can provide for a current owner as beneficiary during life and, upon death, can provide for contingent beneficiaries.   But there is debate over whether an IRA account is a trust, as evidenced by the lead and concurring opinions in *Kelly v. May Assocs.*   Although Section 408(a), Title 26, U.S. Code provides that " 'individual retirement account' means a trust," given the divergent opinions on the issue, and the potential for unintended consequences, we are not willing to hold that IRA accounts in Ohio are trusts.

{¶ 16} The foregoing leads us to examine the transfer-on-death provision in R.C. 1709.09.   In *Bielat v. Bielat* (2000), 87 Ohio St.3d 350, the Ohio Supreme Court upheld the validity of the beneficiary clause in an IRA agreement.   *Bielat* specifically referred to R.C. 1709.09(A), which states: "(A) Any transfer-on-death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner of the security and the registering entity and by reason of sections 1709.01 to 1709.11 of the Revised Code and is not testamentary." *Bielat* held:   "[W]e affirm the judgment of the

---

[6] We note that in *Kelly v. May Assocs.*, 2008-Ohio-1507, Barbara Kelly apparently decided that upon death she wanted her assets to transfer to her nephew Richard.   She changed all her accounts, except her IRA, to joint accounts with Richard, with right of survivorship.   We presume the precise reason she did not similarly change her IRA is that placing an IRA in joint holding would destroy the tax-advantaged status of the account.

court of appeals and uphold the validity of the beneficiary clause in the IRA Adoption Agreement executed between Mr. Bielat and Merrill Lynch." *Bielat* at 352. By indicating that an asset "held in beneficiary form" acquires its effectiveness by reason of the contract, and is not testamentary, R.C. 1709.09(A) and *Bielat* exclude the transfer from the decedent's estate (unless the estate is the designated or default beneficiary). As a consequence, the asset transfers outside the estate, and the formalities of the statute of wills are not required. We do not interpret R.C. 1709.09 as directly stating that the asset transfers according to the contract, only that the transfer derives its effectiveness from the contract. But if this nontestamentary transfer derives its effectiveness from the contract, a transfer according to the "clearly expressed intent" of the owner is beyond the contract and does not benefit from the nontestamentary characterization of R.C. 1709.09(A). In other words, if a transfer upon death is effective by reason of the "clearly expressed intent" of the insured, as appellant argues we should hold, R.C. 1709.09(A) does not save it from being included in the estate, subject to the formalities of the statute of wills and subject to the statutory benefits and elections that a surviving spouse may choose to receive.

{¶ 17} The Ohio Supreme Court has wrestled with transfers upon death in the context of joint and survivorship accounts, trying to provide predictability, certainty, and reliability: "[O]ur efforts to determine survivorship rights by a *post-mortem* evaluation of extrinsic evidence of depositor intent are flawed to the point of offering no predictability * * *. Only when the depositor knows that the terms of the contract will be conclusive of his or her intent to transfer a survivorship interest will the depositor be able to make an informed choice as to whether to utilize the joint and survivorship account." *Wright v. Bloom*, 69 Ohio St.3d at

604. The court recognized that "[t]he need for uniformity is essential." Id. In this related context, the court chose predictability and so do we. It is our determination that the beneficiary designation according to the terms of the contract should be controlling.

{¶ 18} We return now to *Kelly v. May Assocs.,* 2008-Ohio-1507, which appellants cite for the proposition that a financial custodian waives compliance with its change-of-beneficiary policy by interpleading disputed funds to the court and disclaiming any interest in the outcome. There, Barbara Kelly had an IRA with the May Credit Union and designated her nephew as beneficiary. Kelly later telephoned the company and told a teller to make her daughter the beneficiary. The teller completed the necessary form and sent it to Kelly with "per member" written on the signature line. Kelly failed to sign the form before her death. The terms of Kelly's IRA provided that she could change beneficiaries only by completing and signing the form. Kelly's daughter found a copy of the form following her mother's death. The daughter filed a declaratory judgment action, the nephew counterclaimed, and the credit union interpleaded the funds to the court.

{¶ 19} Upon review, the Ninth District held that by filing an interpleader action, the credit union waived its requirement that a change-of-beneficiary form must be signed. The court determined that the account should be transferred to the daughter based on the clearly expressed intent of the decedent. In reaching this conclusion, the Ninth District drew an analogy to cases involving disputes over the proper beneficiary of life insurance proceeds. The lead opinion states:

{¶ 20} "Like the individual retirement account at issue in this case, life insurance policies typically include a procedure for designating and changing beneficiaries. It has long

been the rule in Ohio that those procedures are intended to protect the insurer from duplicate liability and the insurer is free to waive them. *Rindlaub v. Travelers Ins. Co.,* 175 Ohio St. 303, 305, 194 N.E.2d 577 (1963); *Atkinson v. Metropolitan Life Ins. Co.,* 114 Ohio St. 109, 150 N.E. 748, syllabus paragraph four (1926). Further, if, in the face of conflicting claims to insurance proceeds, the insurer interpleads those proceeds, it has waived any interest in the resolution of the claims, including enforcement of the procedure set forth in its policy for designating and changing beneficiaries. *Rindlaub,* 175 Ohio St. at 305, 194 N.E.2d 577; *Atkinson,* 114 Ohio St. 109, 150 N.E. 748, at syllabus paragraph five. In such a case, if the insured communicated to the insurer her 'clearly expressed intent' to change beneficiaries, the proceeds will be paid to the newly designated beneficiary rather than the originally designated beneficiary even though the insured failed to comply with the process set forth in the policy. *Rindlaub,* 175 Ohio St. 303, 194 N.E.2d 577, at syllabus paragraph two." *Kelly* at ¶ 13.

{¶ 21} "A custodian of an individual retirement account who files an interpleader action when there is a dispute between potential beneficiaries of that account, just like an insurer who files an interpleader action under similar circumstances, waives compliance with its change of beneficiary procedure." Id. at ¶ 18. The concurring opinion agreed with that aspect of the decision. Id. at ¶ 34-35.

{¶ 22} The dissenting opinion in *Kelly v. May Assocs.* declined "to extend the law regarding beneficiaries under insurance contracts to an IRA account." Id. at ¶ 37. Even applying the insurance-law analysis, however, the dissent disagreed that May Credit Union's signature requirement on a change-of-beneficiary form operated solely to protect the company. Therefore, the credit union could not waive the contract requirements simply by interpleading

the funds to the court. Id. The dissent factually distinguished *Rindlaub*, 175 Ohio St. 303, upon which the other judges relied.[7] And although the dissent recognized that Ohio law regarding life insurance has moved toward only requiring substantial compliance with policy provisions for a change of beneficiary, it concluded that Kelly did not even meet a substantial-compliance standard. Id. at ¶ 44.

{¶ 23} The decision in *Kelly v. May Assocs.* does not deal with the distinction between a life insurance policy and an existing asset. Absent, too, is any analysis of R.C. 1709.09 and its implication. Moreover, with its varying opinions on the bases for the decision, we decline to apply *Kelly*'s holding here. We find that Wells Fargo's change-of-beneficiary requirements control and because John did not comply with them, he did not change the beneficiary before his death. Accordingly, the trial court was correct in granting summary judgment in favor of Cynthia Burchfield.

{¶ 24} Even if we were to apply the life insurance line of cases, including *Rindlaub*, we would still conclude that the trial court correctly granted summary judgment. The record reflects that John called and e-mailed his financial advisor about changing beneficiaries. He also signed the change-of-beneficiary forms. Both of these actions demonstrate that, at some time, John did intend to change the beneficiary. However, on the other hand, as Cynthia

---

[7]Cynthia contends that the Ohio Supreme Court effectively overruled *Rindlaub* in *Phillips v. Pelton* (1984), 10 Ohio St.3d 52. We disagree. In *Phillips*, the Ohio Supreme Court recognized that "to effectuate a change of beneficiary the insured must ordinarily follow the procedure directed in the policy." Id. at 53. *Rindlaub* does not hold otherwise. It merely recognizes that an insurer *may* waive compliance with the procedure set forth in the policy. The actual issue in *Phillips* was "whether the terms of the separation agreement executed between appellant and her former spouse and incorporated into their dissolution decree preclude appellant's participation in the proceeds of the former spouse's life insurance notwithstanding the fact that appellant is the named beneficiary under the policy." Id. at 53. *Phillips* concluded that the parties could agree to eliminate each other as beneficiaries, and this agreement would be given effect, even though no specific change of beneficiary was made in the insurance policies. Id. at 54. If anything, this reasoning supports the argument made by LeBlanc and Welch.

notes, he never returned the forms, a fact that reasonably could support an inference that he changed his mind about naming new beneficiaries. That inference is strengthened, at least somewhat, by a suicide note John left. Therein, he expressed deep and continuing love for Cynthia. It appears that a genuine issue of material fact exists with regard to John's intent. Consequently, for present purposes, we must conclude that he intended to change the beneficiary. But that conclusion does not end the analysis.

{¶ 25} The uncertainty that can surround a decedent's intent with regard to a life insurance beneficiary is precisely why "substantial compliance" with a policy's terms is required if the precise terms are not followed. Substantial compliance requires evidence "(1) that the insured definitely intended to change the beneficiary; and (2) that he did everything possible under the circumstances to effect that change." *State Mut. Life Assur. Co. of Am. v. Holmes* (Aug. 30, 1988), Franklin App. No. 88AP-377, citing *Benton v. United Ins. Co. of Am.* (1959), 110 Ohio App. 151. The second part of the test has been expressed as an "attempt to effectuate the change by taking positive action that is equivalent to the action required by the policy provision, and amounts to doing everything the insured can do to make the change in accordance with the policy provision." *Life Ins. Co. of N. Am. v. Leeson* (Apr. 15, 2002), S.D.Ohio No. 00-CV-1394, citing *Aetna Life Ins. Co. v. Weatherford* (C.A. 6, 1991), 924 F.2d 1057.

{¶ 26} We determine that our decision here is not contrary to *Rindlaub*, which is distinguishable on its facts. That decision did not specifically apply the substantial-compliance test. However, the court's reasoning was consistent with a substantial-compliance requirement. The insured in *Rindlaub* sent the insurer witnessed statements on July 2, 1946,

clearly indicating his intention to cancel all previous designations of beneficiaries under the specified life insurance policy and named a new principal and renamed the contingent beneficiary. Approximately five months later, the insured married the newly designated principal beneficiary, and they were married at the time of his death. The court reasoned that because there was "no proof of record that the insured received the insurer's letter of July 16, 1946, * * * it is entirely reasonable to infer that he believed he had done all that was necessary to effectuate a change of beneficiary." *Rindlaub*, 175 Ohio St. at 306. Although *Rindlaub* gave effect to the intent of the insured, it first determined that the insured had done everything he reasonably could do to effectuate the change of beneficiary. The court then proceeded to find that the insured clearly expressed his intent to change his beneficiary from his former to his current wife. Thus, substantial compliance with the rules for a change of beneficiary was a part of the *Rindlaub* result.

{¶ 27} In a case applying Tennessee's rule of substantial compliance and federal common law on the subject, U.S. Sixth Circuit Court of Appeals held, similar to the case at bar, that the failure to return a change-of-beneficiary form does not satisfy the substantial-compliance requirement. See *Magruder v. Northwestern Mut. Life Ins.* (C.A.6, 1975), 512 F.2d 507. In *Magruder*, the insured properly completed a change-of-beneficiary form but did not mail it to the insurance company before he died more than six months later. Id. at 509. The court stated that he had not substantially complied with the policy, as there was "no question that he had ample opportunity to return the forms, or that he had the requisite physical and mental capacity to do so." Id. Likewise, John Burchfield did not return the form and did not substantially comply with the contract. The result is that there is

no basis to effectuate his intent, regardless of how clearly expressed it may have been. After examining the facts, we find the trial court accurately concluded that Burchfield did not change the beneficiary and that Cynthia Burchfield was entitled to judgment in her favor.

{¶ 28} Finally, Cynthia raises an argument that John violated a temporary restraining order ("TRO") by changing the beneficiary of his IRAs. This issue cannot be resolved in the context of summary judgment. John's financial advisor, Aaron Michael, sent him the change-of-beneficiary forms after the two men spoke in late October 2009. Michael testified that he had dated the forms November 2, 2009, before sending them, because he believed John would sign and return them by that time. Thereafter, on November 5, 2009, Cynthia served John with a divorce complaint and a TRO that prohibited him from, inter alia, transferring any accounts or any other interest in any asset. Because John very well may have signed the change-of-beneficiary forms *before* being served with the TRO, it cannot be determined, as a matter of law, that he necessarily violated the TRO. Nevertheless, our preceding determination that the trial court was correct in granting summary judgment renders this issue moot.

Judgment affirmed.

. . . . . . . . . . . .

GRADY, P.J., and FROELICH, J., concur.