[Cite as *Veach v. Chuchanis*, 2014-Ohio-2949.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| CHRISTINE VEACH | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2014CA00026 |
| ANDREW CHUCHANIS, ET AL | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Civil appeal from the Stark County Court of
                                Common Pleas, Case No. 2013CV01591

JUDGMENT:                        Reversed and Remanded

DATE OF JUDGMENT ENTRY:          June 30, 2014

APPEARANCES:

For Defendant-Appellee                For Plaintiff-Appellant

EDMOND MACK                           JAMES L. DYE
Tzangas, Plakas & Mannos              Box 161
220 Market Avenue south               Pickerington, OH 43147
Canton, OH  44702

*Gwin, J.*

{¶1} Plaintiff-appellant, Christine Veach ["Veach"] appeals the Stark County Court of Common Pleas Judgment Entry filed February 3, 2014 that granted appellee Andrew Chuchanis' ["Chuchanis"] motion for summary judgment.

*Facts and Procedural History*

{¶2} The facts of the case are not in dispute and have been stipulated to by the parties.

{¶3} Sentry Life Insurance company ("Sentry") issued life insurance policy number 73-05927-71 (the "Policy") to Tracy Veach Lytle Brown ("Tracy") in 1991. In 1991, at the time Sentry issued the Policy to Tracy, she selected Chuchanis as the Policy's beneficiary and Veach as the contingent beneficiary. In October 1998, seven years after obtaining the Policy, Tracy sent Sentry a letter indicating that she had gotten married, she had a name change, and she wanted to change her primary beneficiary from Chuchanis to her new husband, Richard Lytle. That same letter requested that Sentry send her confirmation of the changes.

{¶4} Later that month, Sentry responded to Tracy's letter, in pertinent part, as follows: "Enclosed is the form that is needed to change the beneficiary designations on your life insurance policy." The letter enclosed a change of beneficiary form that required Tracy to list the name and address of her beneficiaries, sign in front of a witness who is not a beneficiary of the Policy, and provide the witness's signature. The Sentry letter and form were sent to Tracy at her then-current address—the same address where she received the quarterly premium invoices that she paid,

{¶5} The Policy provision regarding change of beneficiaries reads as follows:

**Change of Beneficiary-** You may change the beneficiary during the *insured's* lifetime, The change requires satisfactory written notice to us. After we record it, the change is effective from the date you signed the notice. The *insured* does not have to be living at the time we record the change for it to be effective. We will not be responsible for any payment we make or other action we take before we record the change.

{¶6} Tracy never completed the change of beneficiary form Sentry sent to her in October 1998. Richard Lytle (the person Tracy named in her letter to Sentry) died in 2000. In 2001, Tracy married John Brown. Later that year, Tracy sent a request to change her name because of that marriage. In response, Sentry mailed Tracy another change of beneficiary form. This form was also sent to Tracy's then-current address, Again, Tracy did not respond.

{¶7} On at least two occasions after the paperwork at issue in this case-once in 2009 and once in 2011- Tracy told her good friend that she still loved Chuchanis and that she intended him to have the Policy proceeds in the event of her death.

{¶8} In March 2013 Tracy died, thus giving rise to a $100,000 payout under the Policy. After Tracy died, both Chuchanis and Veach sent letters to Sentry claiming entitlement to the Policy proceeds.

{¶9} In June 2013, because two different people claimed entitlement to the proceeds, Sentry filed an interpleader action, obtained approval to deposit the funds and deposited $102,161.36 with the Court.

{¶10} Chuchanis and Veach filed cross Motions for Summary Judgment. By Judgment Entry filed February 3, 2014, the trial court granted summary judgment to Chuchanis.

*Assignment of Error*

{¶11} Veach raises one assignment of error,

{¶12} "I. THE TRIAL COURT ERRED AND FAILED TO FOLLOW THE CLEAR RULE SET FORTH BY THE OHIO SUPREME COURT IN GRANTING SUMMARY JUDGMENT FOR THE APPELLEE."

*Standard of Review*

{¶13} This matter reaches us upon a grant of summary judgment. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212(1987). As such, we must refer to Civ.R. 56(C).

{¶14} Civ.R. 56(C) states that summary judgment shall be rendered forthwith if,

The pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶15} Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138(1992).

**{¶16}** Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629, 605 N.E.2d 936(1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 65-66, 375 N.E.2d 46(1978).

**{¶17}** In deciding whether there exists a genuine issue of fact, the evidence must be viewed in the nonmovant's favor. Civ.R. 56(C). Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion. *Turner v. Turner*, 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1127(1993).

**{¶18}** Appellate review of summary judgments is *de novo. Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241(1996); *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35,506 N.E.2d 212(1987). We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant at the trial court is found to support it, even if the trial court failed to consider those grounds. See *Dresher,* supra; *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42, 654 N.E.2d 1327(9th Dist. 1995).

*Analysis*

**{¶19}** Veach argues Tracy's failure to complete and return Sentry's change of beneficiary form was waived because Tracy expressed her intent to remove Chuchanis as the primary beneficiary of the Policy in a letter to Sentry Life dated October 7, 1998.

Further, Veach maintains that because Sentry has interpleaded and deposited the policy proceeds in court, Tracy's intention is determinative of the rights of the contesting claimants to the policy proceeds, notwithstanding the absence of the written approval by Tracy required by the provisions of Sentry's policy.

{¶20} In 1963, the Ohio Supreme Court of Ohio had held that by filing an interpleader action, an insurance company waives all of the insurance policy's requirements. *Rindlaub v. Traveler's Ins. Co.*, 175 Ohio St. 303, 194 N.E.2d 577 (1963).

{¶21} In 2012, the Supreme Court of Ohio re-affirmed its decision in *Rindlaub*, articulating that the only factor to be considered in an interpleader beneficiary action is the clear intent of the decedent. *LeBlanc v. Wells Fargo Advisors, L.L.C.*, 134 Ohio St.3d 250, 2012-Ohio-5458, 81 N.E.2d 839 (2012). [Hereinafter "*LeBlanc*"]

{¶22} *LeBlanc* concerned *a* dispute over money that Wells Fargo Advisors, L.L.C., was holding in two IRAs for John F. Burchfield when he committed suicide on December 16, 2009. In 2002, John designated his mother, appellant Gloria Welch, and his stepfather, Bruce Leland, as beneficiaries, 75 percent and 25 percent respectively. *LeBlanc*, ¶2. On May 5, 2007, John married appellee Cynthia Burchfield. Shortly before the marriage, John designated Cynthia as the sole beneficiary on both accounts.

{¶23} On October 28, 2009, John sent an e-mail to his Wells Fargo advisor, Aaron Michael, stating that he and Cynthia were getting divorced and requesting paperwork to remove Cynthia as the beneficiary on his IRAs. Thereafter, by telephone, John gave Michael specifics regarding a change in the beneficiary designation for the IRAs. Michael prepared change-of-beneficiary forms that again designated Welch and Leland as the beneficiaries, 75 percent and 25 percent respectively. In addition, John's

sister, appellant Lori LeBlanc, was listed as the contingent beneficiary. Michael predated the forms "November 2, 2009" and mailed them to John, along with a self-addressed, stamped envelope. *LeBlanc,* ¶5. On November 2, 2009, Cynthia filed a divorce complaint against John. Around the same time, John spoke with Michael and informed him that the change-of-beneficiary forms were "already taken care of." Approximately six weeks later, John committed suicide. He left a note that contained a postscript in which he expressed his love for Cynthia.

{¶24} After John's death, Leland and LeBlanc asked Michael to look through John's financial documents to wind up John's affairs. Around January 25, 2010, Michael and one of John's co-workers discovered the signed change-of-beneficiary forms in an envelope among John's papers. That same morning, Michael gave the forms to his manager at Wells Fargo. Cynthia, LeBlanc, and Welch made conflicting demands of Wells Fargo for the IRA proceeds. *LeBlanc*, ¶7 (Footnote omitted). In response, Wells Fargo filed an action in interpleader against LeBlanc, Welch, and Cynthia, in which it represented that it was "unable to determine the validity of the conflicting demands." Wells Fargo disclaimed any interest in the proceeds of John's IRA accounts and offered to deposit the funds with the court's clerk or to maintain the account until the dispute was resolved. The trial court granted summary judgment to Cynthia, the beneficiary designated on the form in Wells Fargo's possession at the time of John's death.

{¶25} The Second District Court of Appeals affirmed. *LeBlanc v. Wells Fargo Advisors*, *L.L.C.*, 196 Ohio App.3d 213, 2011-Ohio-5553, 962 N.E.2d 872. In doing so, it emphasized that John had not complied with the Wells Fargo policy, which required that change-of-beneficiary forms be returned to the company. Id. at ¶ 12. The Second

District further concluded that Wells Fargo had not waived compliance with its change-of-beneficiary procedure by filing an action in interpleader against the claimants. Id. at ¶ 11.

{¶26} The Court in *LeBlanc* noted that in reaching that conclusion, the Second District rejected the Ninth District Court of Appeals' decision in *Kelly v. May Assoc. Fed. Credit Union*, 9th Dist. No. 23423, 2008-Ohio-1507, 2008 WL 836014, which held that an IRA custodian waives compliance with its change-of-beneficiary procedures when it interpleads disputed funds.

{¶27} As is true in the case at bar, the Second District concluded that John's failure to return the forms to Wells Fargo before his death constituted a failure to substantially comply with Wells Fargo's procedure and that that failure was fatal to Welch and LeBlanc's claims, without regard to John's actual intent. It affirmed summary judgment in favor of Cynthia. *LeBlanc*, ¶13.

{¶28} The Ninth District came to the opposite conclusion on similar facts. In *Kelly v. May Assoc. Fed. Credit Union*, 9th Dist. Summit No. 23423, 2008-Ohio-1507, the Court acknowledged that Barbara had not complied with the May Associates' procedures, which required that changes to beneficiaries "be made by completing and signing an IRA beneficiary designation form." Id. at ¶ 5. But it concluded that May Associates waived the signature requirement when it filed the interpleader action. Id. at ¶ 13. In *LeBlanc*, the Supreme Court noted,

> To reach that conclusion, the *Kelly* court applied our holdings in cases dealing with life-insurance-policy proceeds and justified doing so because life-insurance policies and individual retirement accounts share a

salient feature—they both "typically include a procedure for designating and changing beneficiaries." Id. The court then explained that "[i]t has long been the rule in Ohio that those procedures are intended to protect the insurer from duplicate liability and the insurer is free to waive them." Id., *citing Rindlaub v. Travelers Ins. Co.,* 175 Ohio St. 303, 305, 194 N.E.2d 577 (1963), and *Atkinson v. Metro. Life Ins. Co.*, 114 Ohio St. 109, 150 N.E. 748 (1926), paragraph four of the syllabus.

Indeed, "if, in the face of conflicting claims to insurance proceeds, the insurer interpleads those proceeds, it has waived any interest in the resolution of the claims, including enforcement of the procedure set forth in its policy for designating and changing beneficiaries." Id., citing *Rindlaub* and *Atkinson.* "In such a case, if the insured communicated to the insurer her 'clearly expressed intent' to change beneficiaries, the proceeds will be paid to the newly designated beneficiary rather than the originally designated beneficiary * * *." Id., *citing Rindlaub* at paragraph two of the syllabus.

There was no question that Barbara had telephoned May Associates and told a teller to change her beneficiary designation. "Based on [the teller's] testimony, coupled with the change of beneficiary form completed by the teller," the Ninth District concluded that there was no genuine issue of fact whether Barbara had clearly expressed to May Associates her intent to change her beneficiary. *Kelly*, 2008-Ohio-1507,

2008 WL 836014, at ¶ 27. Accordingly, it affirmed summary judgment in favor of Janice. Id. at ¶ 32.

*LeBlanc v. Wells Fargo Advisors, L.L.C.*, 134 Ohio St.3d 250, 2012-Ohio-5458, 81 N.E.2d 839, ¶¶24-27.

**{¶29}** The Supreme Court granted LeBlanc' and Welch's discretionary appeal and certified a conflict between the decisions of the Ninth District Court of Appeals and the Second District Court of Appeals concerning the effect of an individual retirement account ("IRA") custodian's filing of an interpleader action against competing claimants.

**{¶30}** In *LeBlanc*, the Supreme Court agreed that the case is analogous to cases in which an insurer brings an interpleader action asking the court to determine the rightful beneficiary of a life-insurance policy when there is evidence of an insured's intent to change the beneficiary coupled with substantial, but not strict, compliance with beneficiary-change procedures contained in the policy. *LeBlanc*, ¶43.

**{¶31}** In *LeBlanc,* the Supreme Court of Ohio re-affirmed its earlier decision in *Rindlaub* and emphasized that the only factor to be considered in an interpleader beneficiary action is the clear intent of the decedent. Specifically, the Court stated,

> We hold that when the custodian of an individual retirement account files an interpleader action against the parties claiming to be the beneficiaries of the account, the custodian waives its contractual change-of-beneficiary procedures, and a person who proves that the owner of the account clearly intended to designate him or her as the beneficiary does not also need to prove that the owner substantially complied with the

change-of-beneficiary procedures in order to recover. Instead, the account owner's clearly expressed intent controls.

*LeBlanc v. Wells Fargo Advisors, L.L.C.,* 134 Ohio St.3d 250, 2012-Ohio-5458, 81 N.E.2d 839, ¶1. The Court reasserted this position applies to insurance cases,

> We also adopt the "clearly expressed intent" test from our insurance cases. See *Rindlaub* at paragraph two of the syllabus. Therefore, if an IRA custodian files an interpleader action, and the account owner's intent to change beneficiaries was clearly communicated to the custodian, the proceeds will be paid to the newly designated beneficiary rather than to the original beneficiary. Id. In such a case, proof of substantial compliance with the custodian's procedures for changing the beneficiary is not required.

*LeBlanc*, ¶46.

**{¶32}** In the case at bar, the trial court found a genuine issue of material fact exists concerning whether Tracy manifested a clear intent to change the named beneficiary. The trial court then found, "Tracy received but failed to execute the forms needed to effectuate the change in beneficiaries. Accordingly...the Court finds that Tracy fails to meet the substantial compliance standard."

**{¶33}** As set forth above, the Ohio Supreme Court has made clear that in a change-of beneficiary case where the insurer files an interpleader action, the trial court should apply the "[c]learly expressed intent" test. In such a case, proof of substantial compliance for changing beneficiaries is not required.

{¶34} Because there is a genuine issue of fact as to the intent of Tracy, we reverse the decision of the Stark County Court of Common Pleas that granted summary judgment in favor of Chuchanis and remand this case to the trial court for further proceedings in accordance with this decision.

By Gwin, J.,

Hoffman, P.J., and

Wise, J., concur