[Cite as *Sentry Life Ins. v. Chuchanis*, 2016-Ohio-183.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| SENTRY LIFE INSURANCE COMPANY | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2015 CA 00063 |
| ANDREW CHUCHANIS, et al. | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
Pleas, Case No.  2013 CV 01591


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     January 19, 2016


APPEARANCES:

For Defendant-Appellant Veach                   For Defendant-Appellee Chuchanis

JAMES L. DYE                                   EDMOND MACK
THE LAW OFFICE OF JAMES L. DYE                 TZANGAS, PLAKAS & MANNOS
Post Office Box 161                            220 Market Avenue South
Pickerington, Ohio  43147                      Canton, Ohio  44702

*Wise, J.*

**{¶1}** Appellant, Christine Veach appeals the March 10, 2015, decision of Stark County Court of Common Pleas finding in favor of Appellee Andrew Chuchanis following a trial to the bench.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** The facts of the case are not in dispute and have been stipulated to by the parties.

**{¶3}** Sentry Life Insurance company ("Sentry") issued life insurance policy number 73-05927-71 (the "Policy") to Tracy Veach Lytle Brown ("Tracy") in 1991. In 1991, at the time Sentry issued the Policy to Tracy, she selected Andrew Chuchanis as the Policy's beneficiary and Christine Veach as the contingent beneficiary. In October 1998, seven years after obtaining the Policy, Tracy sent Sentry a letter indicating that she had gotten married, she had a name change, and she wanted to change her primary beneficiary from Chuchanis to her new husband, Richard Lytle. That same letter requested that Sentry send her confirmation of the changes.

**{¶4}** Later that month, Sentry responded to Tracy's letter, in pertinent part, as follows: "Enclosed is the form that is needed to change the beneficiary designations on your life insurance policy." The letter enclosed a change of beneficiary form that required Tracy to list the name and address of her beneficiaries, sign in front of a witness who is not a beneficiary of the Policy, and provide the witness's signature. The Sentry letter and form were sent to Tracy at her then-current address—the same address where she received the quarterly premium invoices that she paid,

**{¶5}** The Policy provision regarding change of beneficiaries reads as follows:

**Change of Beneficiary-** You may change the beneficiary during the *insured's* lifetime. The change requires satisfactory written notice to us. After we record it, the change is effective from the date you signed the notice. The *insured* does not have to be living at the time we record the change for it to be effective. We will not be responsible for any payment we make or other action we take before we record the change.

{¶6} Tracy never completed the change of beneficiary form Sentry sent to her in October, 1998. Richard Lytle (the person Tracy named in her letter to Sentry) died in 2000.

{¶7} In 2001, Tracy married John Brown. Later that year, Tracy sent a request to Sentry to change her name because of her most recent marriage. In response, Sentry mailed Tracy another change of beneficiary form. This form was also sent to Tracy's then-current address. Again, Tracy did not respond.

{¶8} On at least two occasions after the paperwork at issue in this case, once in 2009 and once in 2011, Tracy told her good friend that she still loved Chuchanis and that she intended for him to have the Policy proceeds in the event of her death.

{¶9} In March, 2013, Tracy died, thus giving rise to a $100,000 payout under the Policy. After Tracy died, both Chuchanis and Veach sent letters to Sentry claiming entitlement to the Policy proceeds.

{¶10} In June, 2013, because two different people claimed entitlement to the proceeds, Sentry filed an interpleader action, obtained approval to deposit the funds, and deposited $102,161.36 with the Clerk of Courts.

**{¶11}** Chuchanis and Veach filed cross Motions for Summary Judgment. By Judgment Entry filed February 3, 2014, the trial court granted summary judgment to Chuchanis.

**{¶12}** Veach appealed to this Court, which reversed and remanded the matter back to the trial court for a determination of the decedent's clearly expressed intent, without regard for whether there was substantial compliance with policy provisions. *See Veach v. Chuchanis*, Stark App. 2014 CA 00026, 2014-Ohio-2949.

**{¶13}** Upon remand, the trial court conducted a bench trial on March 2, 2015.

**{¶14}** By Judgment Entry filed March 10, 2015, the trial court found "that the only clearly manifested intent of the decedent was to have Chuchanis receive the policy proceeds" and entered judgment in favor of Appellee Chuchanis.

**{¶15}** Appellant Veach now appeals, raising the following Assignment of Error for review:

## ASSIGNMENT OF ERROR

**{¶16}** "I. THE TRIAL COURT ERRED AND FAILED TO FOLLOW THE CLEAR RULE SET FORTH BY THE OHIO SUPREME COURT IN GRANTING JUDGMENT FOR THE APPELLEE BY IMPERMISSIBLY CONSIDERING THE FAILURE OF THE DECEDENT TO FOLLOW THE INSURANCE COMPANY'S RULES AND BY CONSIDERING STATEMENTS MADE NOT TO THE INSURANCE COMPANY BUT TO A THIRD PARTY."

**I.**

{¶17} Appellant Veach argues that the trial court erred in finding that decedent intended for Appellee Chuchanis to be the rightful beneficiary of her life insurance policy. We disagree.

{¶18} More specifically, Appellant Veach argues that the trial court erred in considering statements made to a third party as evidence of the decedent's intent in this matter and further in giving consideration to the decedent's failure to follow the rules of the insurance company for changing a beneficiary designation.

{¶19} Initially, we note our standard of review in this matter following the bench trial in the lower court. According to the Ohio Supreme Court, an appellate court should be "guided by a presumption" the fact-finder's findings are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273. Under these guidelines, an appellate court should not reverse the trial court's judgment unless it is against the manifest weight of the evidence. Therefore, an appellate court shall not reverse if the judgment is supported by " 'some competent, credible evidence going to all the essential elements of the case * * *.' " *Id.* at 80, 461 N.E.2d 1273, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at syllabus. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court *de novo.*" (Emphasis sic.) *Ohayon v. Safeco Ins. Co. of Illinois* (Dec. 22, 1999), 9th Dist. No. 19617, at *2, quoting *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

{¶20} Appellant Veach argues that the decedent's failure to complete and return Sentry's change of beneficiary form was waived because the decedent expressed her

intent to remove Appellee Chuchanis as the primary beneficiary of the Policy in her October 7, 1998, letter to Sentry. Further, Appellant maintains that because Sentry interpleaded and deposited the policy proceeds to the court, the decedent's intention is determinative of the rights of the contesting claimants to the policy proceeds, notwithstanding the absence of the written approval by the decedent required by the provisions of Sentry's policy.

**{¶21}** In *Rindlaub v. Traveler's Ins. Co.*, 175 Ohio St. 303, 194 N.E.2d 577 (1963), the Ohio Supreme Court of Ohio held that by filing an interpleader action, an insurance company waives all of the insurance policy's requirements.

**{¶22}** In 2012, the Supreme Court of Ohio re-affirmed its decision in *Rindlaub*, articulating that the only factor to be considered in an interpleader beneficiary action is the clear intent of the decedent. *LeBlanc v. Wells Fargo Advisors, L.L.C.*, 134 Ohio St.3d 250, 2012-Ohio-5458, 81 N.E.2d 839 (2012).

**{¶23}** *LeBlanc* concerned a dispute over money that Wells Fargo Advisors, L.L.C., was holding in two IRAs for John F. Burchfield when he committed suicide on December 16, 2009. In 2002, John designated his mother, appellant Gloria Welch, and his stepfather, Bruce Leland, as beneficiaries, 75 percent and 25 percent respectively. *LeBlanc*, ¶2. On May 5, 2007, John married appellee Cynthia Burchfield. Shortly before the marriage, John designated Cynthia as the sole beneficiary on both accounts.

**{¶24}** On October 28, 2009, John sent an e-mail to his Wells Fargo advisor, Aaron Michael, stating that he and Cynthia were getting divorced and requesting paperwork to remove Cynthia as the beneficiary on his IRAs. Thereafter, by telephone, John gave Michael specifics regarding a change in the beneficiary designation for the IRAs. Michael

prepared change-of-beneficiary forms that again designated Welch and Leland as the beneficiaries, 75 percent and 25 percent respectively. In addition, John's sister, appellant Lori LeBlanc, was listed as the contingent beneficiary. Michael predated the forms "November 2, 2009" and mailed them to John, along with a self-addressed, stamped envelope. *LeBlanc,* ¶5. On November 2, 2009, Cynthia filed a divorce complaint against John. Around the same time, John spoke with Michael and informed him that the change-of-beneficiary forms were "already taken care of." Approximately six weeks later, John committed suicide. He left a note that contained a postscript in which he expressed his love for Cynthia.

**{¶25}** After John's death, Leland and LeBlanc asked Michael to look through John's financial documents to wind up John's affairs. Around January 25, 2010, Michael and one of John's co-workers discovered the signed change-of-beneficiary forms in an envelope among John's papers. That same morning, Michael gave the forms to his manager at Wells Fargo. Cynthia, LeBlanc, and Welch made conflicting demands of Wells Fargo for the IRA proceeds. *LeBlanc*, ¶7 (Footnote omitted). In response, Wells Fargo filed an action in interpleader against LeBlanc, Welch, and Cynthia, in which it represented that it was "unable to determine the validity of the conflicting demands." Wells Fargo disclaimed any interest in the proceeds of John's IRA accounts and offered to deposit the funds with the court's clerk or to maintain the account until the dispute was resolved. The trial court granted summary judgment to Cynthia, the beneficiary designated on the form in Wells Fargo's possession at the time of John's death.

**{¶26}** The Second District Court of Appeals affirmed. *LeBlanc v. Wells Fargo Advisors*, *L.L.C.*, 196 Ohio App.3d 213, 2011-Ohio-5553, 962 N.E.2d 872. In doing so, it

emphasized that John had not complied with the Wells Fargo policy, which required that change-of-beneficiary forms be returned to the company. *Id.* at ¶12. The Second District further concluded that Wells Fargo had not waived compliance with its change-of-beneficiary procedure by filing an action in interpleader against the claimants. *Id.* at ¶11.

**{¶27}** The Court in *LeBlanc* noted that in reaching its conclusion, the Second District rejected the Ninth District Court of Appeals' decision in *Kelly v. May Assoc. Fed. Credit Union*, 9th Dist. No. 23423, 2008-Ohio-1507, 2008 WL 836014, which held that an IRA custodian waives compliance with its change-of-beneficiary procedures when it interpleads disputed funds.

**{¶28}** As is true in the case at bar, the Second District concluded that John's failure to return the forms to Wells Fargo before his death constituted a failure to substantially comply with Wells Fargo's procedure and that that failure was fatal to Welch and LeBlanc's claims, without regard to John's actual intent. It affirmed summary judgment in favor of Cynthia. *LeBlanc*, ¶13.

**{¶29}** The Ninth District came to the opposite conclusion on similar facts. In *Kelly v. May Assoc. Fed. Credit Union*, 9th Dist. Summit No. 23423, 2008-Ohio-1507, the Court acknowledged that Barbara had not complied with the May Associates' procedures, which required that changes to beneficiaries "be made by completing and signing an IRA beneficiary designation form." *Id.* at ¶ 5. But it concluded that May Associates waived the signature requirement when it filed the interpleader action. *Id.* at ¶ 13. In *LeBlanc*, the Supreme Court noted,

> To reach that conclusion, the *Kelly* court applied our holdings in
> cases dealing with life-insurance-policy proceeds and justified doing so

because life-insurance policies and individual retirement accounts share a salient feature - they both "typically include a procedure for designating and changing beneficiaries." *Id.* The court then explained that "[i]t has long been the rule in Ohio that those procedures are intended to protect the insurer from duplicate liability and the insurer is free to waive them." *Id.*, *citing Rindlaub v. Travelers Ins. Co.,* 175 Ohio St. 303, 305, 194 N.E.2d 577 (1963), and *Atkinson v. Metro. Life Ins. Co.*, 114 Ohio St. 109, 150 N.E. 748 (1926), paragraph four of the syllabus.

Indeed, "if, in the face of conflicting claims to insurance proceeds, the insurer interpleads those proceeds, it has waived any interest in the resolution of the claims, including enforcement of the procedure set forth in its policy for designating and changing beneficiaries." *Id.*, citing *Rindlaub* and *Atkinson*. "In such a case, if the insured communicated to the insurer her 'clearly expressed intent' to change beneficiaries, the proceeds will be paid to the newly designated beneficiary rather than the originally designated beneficiary * * *." *Id.*, *citing Rindlaub* at paragraph two of the syllabus.

There was no question that Barbara had telephoned May Associates and told a teller to change her beneficiary designation. "Based on [the teller's] testimony, coupled with the change of beneficiary form completed by the teller," the Ninth District concluded that there was no genuine issue of fact whether Barbara had clearly expressed to May Associates her intent to change her beneficiary. *Kelly*, 2008-Ohio-1507, 2008 WL 836014, at ¶

27. Accordingly, it affirmed summary judgment in favor of Janice. *Id.* at ¶ 32.

*LeBlanc v. Wells Fargo Advisors, L.L.C.*, 134 Ohio St.3d 250, 2012-Ohio-5458, 81 N.E.2d 839, ¶¶24-27.

**{¶30}** The Supreme Court granted LeBlanc' and Welch's discretionary appeal and certified a conflict between the decisions of the Ninth District Court of Appeals and the Second District Court of Appeals concerning the effect of an individual retirement account ("IRA") custodian's filing of an interpleader action against competing claimants.

**{¶31}** In *LeBlanc*, the Supreme Court agreed that the case is analogous to cases in which an insurer brings an interpleader action asking the court to determine the rightful beneficiary of a life-insurance policy when there is evidence of an insured's intent to change the beneficiary coupled with substantial, but not strict, compliance with beneficiary-change procedures contained in the policy. *LeBlanc*, ¶43.

**{¶32}** In *LeBlanc,* the Supreme Court of Ohio re-affirmed its earlier decision in *Rindlaub* and emphasized that the only factor to be considered in an interpleader beneficiary action is the clear intent of the decedent. Specifically, the Court stated,

> We hold that when the custodian of an individual retirement account files an interpleader action against the parties claiming to be the beneficiaries of the account, the custodian waives its contractual change-of-beneficiary procedures, and a person who proves that the owner of the account clearly intended to designate him or her as the beneficiary does not also need to prove that the owner substantially complied with the change-

of-beneficiary procedures in order to recover. Instead, the account owner's

clearly expressed intent controls.

*LeBlanc v. Wells Fargo Advisors, L.L.C.,* 134 Ohio St.3d 250, 2012-Ohio-5458, 81 N.E.2d

839, ¶1. The Court reasserted this position applies to insurance cases:

> We also adopt the "clearly expressed intent" test from our insurance
>
> cases. *See Rindlaub* at paragraph two of the syllabus. Therefore, if an IRA
>
> custodian files an interpleader action, and the account owner's intent to
>
> change beneficiaries was clearly communicated to the custodian, the
>
> proceeds will be paid to the newly designated beneficiary rather than to the
>
> original beneficiary. *Id.* In such a case, proof of substantial compliance with
>
> the custodian's procedures for changing the beneficiary is not required.

*LeBlanc*, ¶46.

**{¶33}** As set forth above, the Ohio Supreme Court has made clear that in a

change-of beneficiary case where the insurer files an interpleader action, the trial court

should apply the "[c]learly expressed intent" test. In such a case, proof of substantial

compliance for changing beneficiaries is not required.

**{¶34}** Upon review, we do not find that the trial court's decision was against the

manifest weight of the evidence.

**{¶35}** At the bench trial in this matter, the trial court heard testimony from Appellee

Chuchanis, Jennifer Laliberte, Appellant Christine Veach, Joseph Veach, Karen Veach

and Julie Long.

**{¶36}** The trial court found the testimony of the Jennifer Laliberte, the decedent's

best friend since the late 1980's, to be of particular importance:

Based on Laliberte's testimony, the Court finds that the decedent recognized that she had sufficient means to take care of her family, and that as late as 2011, she knew that Chuchanis was still the beneficiary of this policy because no beneficiary change had been effectuated. The Court finds that on one occasion in 2009 and on another in 2011, the decedent specifically expressed her intent to leave Chuchanis the proceeds of this policy upon her death because of the lengthy and special relationship they had shared. This testimony also corroborated that of Mr. Chuchanis, who indicated the decedent had made a similar, clear verbal expression of that same recognition and intent in March of 2000, just after the death of Richard Lytle.

**{¶37}** (Judgment Entry, March 10, 2015 at 3.)

**{¶38}** The trial court further found:

Based on the evidence presented at trial, which included expressions of the decedent's intent both before and after 1998, the Court is not convinced that the 1998 letter was a clear expression of the decedent's intent (as opposed to an intent to keep the peace in a new marriage), nor is the letter dispositive of the issue of the decedent's most recent expression of intent.

Specifically, the Court finds that the decedent was financially sophisticated and knew that the letter she sent would not be sufficient to effectuate the change. The Court also finds that having this knowledge, she intentionally opted to not complete the additional steps that were needed to

effectuate the change. While compliance with policy provisions is not relevant in and of itself, the Court finds that the decedent's knowledge, coupled with her intentional failure to complete follow-up actions is evidence that she intended to keep the originally named beneficiary, especially when viewed in light of all the other evidence adduced at trial.

**{¶39}** (Judgment Entry, March 10, 2015 at 2-3.)

**{¶40}** Upon review, we find that evidence of the decedent's intent was presented to the trial court through the testimony of Ms. Laliberte and Mr. Chuchanis.  Based on the foregoing, we find that there exists competent, credible evidence to support the trial court's judgment.

**{¶41}** Appellant's sole Assignment of Error is overruled.

**{¶42}**  For the foregoing reasons, the decision of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

JWW/d 104